DON GIBSON v. MIAMI VALLEY MILK PRODUCERS, INC., THE KROGER COMPANY, HAROLD WRIGHT, JOE SOLLARS, HOWARD LINN, AND MIAMI VALLEY MILK PRODUCERS ASSOCIATION.

[No. 2-1172A112. Filed July 31, 1973. Rehearing denied September 13, 1973. Transfer denied January 18, 1974.]

*John T. Lorenz, John E. Konowitz, Kightlinger, Young, Gray & DeTrude,* of counsel, of Indianapolis, for appellant.

*Curtis S. Travis, Royse, Travis, Hendrickson & Pantzer,* of counsel, of Indianapolis, for appellees, Miami Valley Milk Producers, Inc., Harold Wright, Joe Sollars, Howard Linn and Miami Valley Milk Producers Association, *Theodore R. Boehm, Rory O'Bryan, Baker & Daniels,* of counsel, of Indianapolis, for appellee The Kroger Company.

SHARP, J.—On February 28, 1968 the Plaintiff-Appellant, Don Gibson, filed a complaint in four legal paragraphs in the Superior Court of Marion County, Room 3, in which the Miami Valley Milk Producers, Inc., The Kroger Company, Harold Wright, Joe Sollars and Howard Linn were designated as party defendants. In each paragraph the following allegation was made:

"2. The Defendant, Miami Valley Milk Producers, Inc. (hereinafter referred to as 'Miami') is a foreign corporation admitted to do business in the State of Indiana, and is primarily engaged as a dairy cooperative operating in cen-

tral Indiana with its principal place of business at Muncie, Indiana."

The record discloses that service was obtained on Miami Valley Milk Producers, Inc. by service on its resident agent, Harold Wright in Muncie, Indiana.

The essential allegations of the complaint are:

"5. The Defendants, Joe Sollars and Howard Linn, are agents, servants and employees of the Defendant, Miami, and serve in the capacity of field representatives, and at all times mentioned herein were acting within the scope of their agency.

6. That prior to February 28, 1966, the Plaintiff was the owner of various milk routes and as a part of said business hauled milk from the producers of said milk on the routes owned by the Plaintiff to various dairies in the State of Indiana, and elsewhere.

7. That the plaintiff and the various producers on the milk routes owned by the Plaintiff entered into agreements from 1958 and thereafter covering the pickup of the milk at the producers location and delivery to a dairy where said milk would be processed into milk and other dairy products and said agreements further provided for compensation paid by the producer to the plainitff computed on a basis of the weight of the milk hauled by the Plaintiff.

8. That the Plaintiff has from the date of the aforementioned agreements until their termination performed said agreements completely.

9. That the Defendants, and each of them, knew of the substance of the agreements between the Plaintiff and the milk producers on the routes owned by the Plaintiff.

10. That the dairy or milk processer would compute the total due the milk producers for the milk and deliver to said producer a check deducting the amount due to Plaintiff in accordance with the agreement between the Plaintiff and the producer and said dairy, or other processor would then deliver said amounts to the Plaintiff.

11. That on or before February 28, 1966 and thereafter, the Defendants intentionally and maliciously entered upon a course of conduct to destroy the contractual and business relationship between the Plaintiff and all milk producers who had agreed with the Plaintiff to haul their milk, all without justification or excuse.

12. That on February 28, 1966, the Defendants, Miami, sent a letter to all their members who were the producers on the milk routes owned by the Plaintiff. Said letter is attached hereto and made a part hereof and marked Exhibit 'A'. That the said letter contained facts which the Defendant, Miami, knew were not true or knew that said letter contained misrepresentation of facts.

13. That said letter, in the second to the last paragraph thereof, stated that the Defendant, Miami, would secure another hauler for the producers who had entered into agreements with the Plaintiff.

14. That the Defendants (other than Miami, including an agent, servant, and employee of Kroger, whose name is well known to the Defendant, Kroger, but not to the Plaintiff and at all times mentioned herein acted within the scope of his agency) at the request of Miami, and on their own behalf, after the letter referred to above was sent by the Defendant, Miami, made personal calls upon the milk producers, who had entered into agreements with the Plaintiff to haul their milk and reasserted the false and misleading statements contained in the letter of February 28, 1966. That, in addition but not limited to, the Defendants, and each of them, asserted that the Plaintiff or his employees had lost their license to haul milk, that the dairy that was purchasing the milk of the producers would not accept milk from producers who the Plaintiff hauled for, and that the Plaintiff had quit hauling milk.

15. That Defendants and each of them further threatened the producers with expulsion from the Defendant, Miami, if they did not agree to terminate their agreement with the Plaintiff.

16. That as a result of the intentional and malicious interference of the Defendants, and each of them, as hereinabove mentioned, many producers switched haulers from the Plaintiff to another hauler designated by Miami, thereby causing great loss of income and profits to the Plaintiff and as a result of the conduct of the Defendants, and each of them, Plaintiff's business has been reduced by at least forty (40) per cent.

17. That, further, as a result of the intentional and malicious interference of the Defendants, and each of them, Plaintiff has suffered injuries to his business character and reputation and has been humiliated, embarrassed and has been an object of public ridicule in his community."

This complaint has attached to it as an exhibit, a letter on the stationery of "Miami Valley Milk Producers Association" with an address at Dayton, Ohio. Count I of said complaint purports to allege a claim for interference with contractual and business relations, Count II for libel, Count III for slander, and Count IV for conspiracy in restraint of trade.

Between February 28, 1968 and February 24, 1972 the parties engaged in filing numerous dilatory pleadings and engaged in discovery. During this time Appellant also amended his complaint in several particulars not relevant here. The complaint alleged that the misconduct of the defendants designated occurred on February 28, 1966. The amended complaint filed on May 9, 1969 also alleged February 28, 1966 as the date of the defendants misconduct. On February 24, 1972 the Appellant filed a motion to amend said complaint and alleged in part:

> "Plaintiff, due to defendant's answers to plaintiff's interrogatories, moves to amend his amended complaint in the following particulars:
>
> 1. To amend by *adding* the defendant, 'Miami Valley Milk Producers Association' as a party defendant to the caption of the complaint." (our emphasis)

The amendment then proceeded to assert the claims that had previously been stated against Miami Valley Milk Producers, Inc., against the newly added defendant, Miami Valley Milk Producers Association. In a second amended complaint filed on February 25, 1972 the misconduct of the defendants is, for the first time, alleged to have been on February 28, 1966 "and thereafter" although the factual allegations are consistently the same as in the original complaint and the first amended complaint. The assertions in the complaint when considered in the light most favorable to Appellant rest on a letter dated and mailed on February 28, 1966. After the second amended complaint was filed February 25, 1972 and service was had on the Miami Valley Milk Producers Associa-

tion by certified mail, return receipt, to said association at 320 Marley Road, Dayton, Ohio.

On March 16, 1972 the Defendant-Appellee, The Kroger Company, filed its motion to dismiss which stated:

"Defendant The Kroger Company respectfully moves the Court to dismiss the second amended complaint pursuant to Rule 12 for the following reasons:

1. This Court has no jurisdiction over the subject matter of the claims alleged in the complaint.

2. The plaintiff has failed to join a party needed for just adjudication under Rule 19."

On March 17, 1972 the Miami Valley Milk Producers, Inc. filed its motion to dismiss said second amended complaint which, in pertinent part, reads as follows:

"1. To dismiss the complaint because it appears on the face of the complaint that the court lacks jurisdiction of the subject matter in that said action is barred by the statute of limitations.

3. To dismiss the complaint on the ground that the court lacks jurisdiction over the person of the defendant in that no service of process was ever issued against the defendant nor ever served upon it.

6. To dismiss the action because the complaint fails to state a cause of action against this defendant upon which relief can be granted."

On April 4, 1972 the Defendants-Appellees Wright, Sollars, Linn and Miami Valley Milk Producers Association filed a motion to dismiss the second amended complaint which, in relevant part, stated:

"(2) The Court has no jurisdiction over the subject matter of the claims alleges [sic] in the complaint.

(3) The plaintiff has failed to join an indispensable party needed for just adjudication under Rule 19 (A) (1) in both the original and First Amended Complaints prior to the expiration of the statute of limitations."

On March 22, 1972 Plaintiff-Appellant filed a pleading labeled "Motion for Change of Venue" which stated:

"Pursuant to Indiana Trial Rule 75(B) of the Indiana Rules of Civil Procedure the plaintiff, Don Gibson, respectfully moves the Court for a change of venue from this Court to the Circuit Court of Marion County."

On April 19, 1973 the trial court made the following entry:

"Defendant The Kroger Company having filed its Motion to Dismiss this action (1) for lack of jurisdiction over the subject matter and (2) for failure to join a party needed for just adjudication, and the other defendants named in the original complaint having moved to dismiss the complaint (1) for lack of jurisdiction over the subject matter and (2) for failure to join an indispensable party, and Miami Valley Milk Producers Association having moved to dismiss the complaint (1) for the foregoing reasons and (2) for the reason that the claims are barred by the statute of limitations and (3) for lack of jurisdiction over the person of said defendant and (4) for lack of service of process as to said defendant, the Court now concludes, determines and finds as follows:

1. The claims alleged in the complaint are not within the subject matter jurisdiction of this Court.

2. Miami Valley Milk Producers Association has not been served with process in this action and is not properly made a party defendant herein.

3. The plaintiff has failed to join a party needed for just adjudication of this cause.

4. The applicable statute of limitations had run as to all claims asserted in the original and amended complaints prior to January 1, 1970.

5. The provisions of the trial rules of procedure which became effective January 1, 1970, should not be applied to this action commenced February 28, 1968.

6. No ruling is necessary on all other pending motions in this cause.

It is, therefore, ORDERED that the second amended complaint be and hereby is dismissed, costs to be paid by the plaintiff."

On a preliminary motion of the Appellees to dismiss this appeal, this court has liberally and generously determined

that Appellant's Motion to Reconsider order of dismissal filed on May 1, 1972 as fulfilling the function, if only minimally so, of a motion to correct errors under TR. 59. We have carefully examined the contents of said motion to reconsider (correct errors) in order to determine precisely what issues were asserted in it. We will now turn to a consideration of those issues.

I.

The first and basic assertion by all Appellees is the lack of jurisdiction over the subject matter. As indicated this assertion is made by all Appellees. It concerns itself with the statutory jurisdiction of the Superior Court of Marion County as fixed by the General Assembly in 1871 as found in IC 1971, 33-5-35-6, Ind. Ann. Stat. § 4-2211 (Burns 1968), the relevant part of which is as follows:

> "Said court, within and for the county or counties in which it may be organized, shall have original concurrent jurisdiction with the circuit court and court of common pleas in all civil causes *except slander,* * * *." (our emphasis)

In a Brief filed by Appellant in Support of the Motion to Reconsider (correct errors) filed in the trial court, he said: "Clearly, Counts I and IV of the plaintiff's complaint are within the jurisdiction of this court. Plaintiff concedes that Counts II and III are not within the court's jurisdiction, but are prepared to pursue this cause of action in this court on Counts I and IV only." Thus, as to Counts II and III the Appellant has conceded that the trial court was without jurisdiction and therefore the motion to dismiss was properly sustained as to said Counts II and III. As to remaining Counts I and IV the Appellees contend that the claims stated there are based on slander as it existed in 1871. It is correct that *Fenstermacher* v. *Indianapolis Times Publishing Company, Inc.* (1936), 102 Ind. App. 189, 1 N.E.2d 655,

held that "slander" as used in § 4-2211 must be defined in terms of law as it existed in 1871.

The early origins of the tort of interference with contractual relations is sketched in Prosser, on Torts, 3rd ed. page 953, and indicates as early as 1851 intentional interference with a contract was an actionable tort. It must be granted that the expansive development of this concept has been in the 20th Century. Generally the delineation between defamation and interference is well stated in Am. Jr. 2d, Vol. 45, p. 292, as follows:

> "Generally, an action will lie for interference by means of false and defamatory statements. Although defamation is the means of interference, the action is not one for libel and slander but for the common-law wrong of malicious interference with contractual rights. The means used do not change the nature of the cause of action. The fact that the means of interference would permit the plaintiff to seek a remedy in libel or slander does not prevent him from seeking a remedy in interference."

While the exact scope of 1871 vintage slander encompassed more than it does today, we cannot say as a matter of law, that Count I of this complaint sounds solely in 1871 slander so as to deprive the trial court of subject matter jurisdiction.

Count IV purports to allege a conspiracy in restraint of trade based on IC 1971, 24-1-2-1, Ind. Ann. Stat. § 23-116 (Burns 1964 Repl.), which reads, in part:

> "Every scheme, . . . or conspiracy in restraint of trade or commerce, . . . is hereby declared to be illegal, . . ."

IC 1971, 24-1-2-7, Ind. Ann. Stat. § 23-122 (Burns 1964 Repl.), provides:

> "Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons, of anything forbidden or declared to be unlawful by this act, may sue therefor in the

circuit or superior courts of any county in which the defendant or defendants, or any of them, reside or are found . . ."

As to Count IV the trial court has express statutory jurisdiction conferred by the General Assembly in 1907.

Therefore, as to Counts I and IV the trial court had subject matter jurisdiction and therefore said Counts should not be dismissed.

## II.

The trial court determined that any claim alleged against the Miami Valley Milk Producers Association in the second amended complaint was barred by the statute of limitations. In his motion to reconsider (correct errors) Appellant makes no reference whatever to the method or motion chosen by Appellees to raise the question of the statute of limitations and likewise, makes no argument whatsoever in regard to the added words "February 26, 1966 and thereafter" [sic] to the second amended complaint in order to allege a continuous tort. We are therefore not required to deal with either question here. This is true even under a liberal reading of said motion within the meaning of *Martin* v. *Grutka* (1972), 151 Ind. App. 167, 278 N.E.2d 586. For the application to the old motion for new trial, see *Pavach* v. *State* (1971), 149 Ind. App. 293, 271 N.E.2d 896. We are required to determine whether the claim alleged against Miami Valley Milk Producers Association is barred by the statute of limitations. It is without dispute that the two year statute of limitations as found in IC 1971, 34-1-2-2, Ind. Ann. Stat. § 2-602 (Burns 1967 Repl.) applies here.

It is also without dispute on the face of this record that at all times herein material that Miami Valley Milk Producers,

Inc., and Miami Valley Milk Producers Association are separate and distinct entities.

Chief Judge Hoffman, speaking for this district of this court, recently in *Ryser* v. *Gatchel* (1972), 151 Ind. App. 62, 278 N.E.2d 320, 324, cited as controlling on this issue the following language from *People of the Living God* v. *Star Towing Co.*, 289 F. Supp. 635 (E.D. La. 1968) :

> " 'In this case, however, the libelant is attempting to add an additional party, to bring in a new party, rather than attempting to correct the name of a party already in the suit. It is well settled that the addition of a party to the lawsuit constitutes a new and independent claim which does not relate back. [Citing authorities] The 1966 amendment to Rule 15(c) does not alter this principle. As Judge Holtzoff pointed out in King v. Udall, 266 F. Supp. 747 (D.D.C. 1967), the new rule by its very terms "is limited to amendments *changing* the party against whom a complaint was served. It does not apply to *additional* parties." Footnote omitted.' "

> \* \* \*

> "The burden is on the complainant to bring suit against the proper party. The very purpose of the statute of limitations would be defeated if defendant-Gatchel were denied the affirmative defense of the running of the statute of limitations."

The Appellant attempts to rely on the doctrine of an amendment relating back to the time of filing the original complaint. Under the present TR. 15 and the prior procedure this doctrine did not permit the addition of an entirely new party or the stating of an entirely new claim after the statute of limitations has run. This is not a case of substituting parties such as the substituting of a present public official in a suit against a prior public official holding the same office. Such was the underlying basis of *Mays* v. *Parker* (1970), 147 Ind. App. 81, 258 N.E.2d 666. For a similar example of permissible *substitution* see *School Town of Monticello* v. *Grant* (1885), 104 Ind. 168, 1 N.E. 302.

Long ago our Supreme Court in *Lagow* v. *Neilson* (1858), 10 Ind. 183, 185, said:

"* * * Generally speaking, an amendment to a complaint has relation to the time the complaint was filed; but this never occurs when such amendment sets up a title not previously asserted, and which involves the question of the statute of limitations. *Miller* v. *McIntire,* 1 McLean, 85.—*Same Case,* 6 Pet. 62. * * *"

*Lagow* barred relation back of amendments adding plaintiffs after the expiration of the statute of limitations. The same principle has been applied to bar addition of new defendants by relation back. *Deep Vein Coal Co.* v. *Dowdle* (1941), 218 Ind. 495, 33 N.E.2d 981.

Neither is this a case of misnomer of party as defined in Ind. Ann. Stat. §§ 2-1066 and 2-1070 (Burns 1967 Repl.). Both provisions were limited to substitution arising from misnomer of the *same* party and do not support the addition of a different party. In said motion to reconsider (correct errors) there is no claim by the Appellant that the Miami Valley Milk Producers Association had waived the statute of limitations or that there is any other equitable basis for its non-application here. TR. Rule 15(C) provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment.

"(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and

"(2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him. * * *"

In *King* v. *Udall* (D.C.D.C. 1967), 266 F. Supp. 747, Judge Alexander Holtzoff, one of the great divines of Federal procedure, said:

"Rule 15 of the Federal Rules of Civil Procedure as recently amended, which deals with amendments of pleadings, does not aid the plaintiffs. Subsection (c) of the Rule concerns relation back of amendments. It is limited to amendments changing the party against whom a complaint was served. It does not apply to additional parties."

It is noted that the rule interpreted by Judge Holtzoff is substantially the same as our TR. 15. For similar results in the Federal system see *Meredith* v. *United Air Lines* (S.D. Cal. 1966), 41 F.R.D. 34; *People of Living God* v. *Star Towing Co.* (E.D. La. 1968), 289 F. Supp. 635; *Weiner* v. *Sherburne Corp.* (D.C. Vt. 1972), 348 F. Supp. 797. For an excellent analysis in a state court see *Drug Cosmetic & Beauty Trades Services, Inc.* v. *McFate* (1971), 14 Ariz. App. 7, 480 P. 2d 30. Thus, under the present rules the amendment would not relate back to add a party.

Therefore, the trial court was correct since the face of the record clearly shows that Appellant attempted to *add* a party defendant long after the two year statute of limitations had run.

### III.

Next we must consider whether the failure to have Miami Valley Milk Producers Association as a party defendant constitutes failure to join a necessary or needed party. Under TR. 19 the appropriate label seems to be "indispensable" party. However, the correct determination of this issue does not turn on any difference between old versus new procedural rules. The result is the same under both.

Under pre-1970 procedure the basic guideline was set out in *Hutcheson* v. *Hanson* (1951), 121 Ind. App. 546, 555, 98 N.E.2d 688:

"The determination of the question of what parties are necessary in order to have a complete settlement of the question involved in litigation is often times a troublesome one.

Our statute, § 2-219, Burns 1946 Replacement, provides that any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved. Decisions interpreting this statute have held that any person whose interests, under the issues, are adverse to the plaintiff, and who, of necessity must and will be affected by the judgment in the cause, *must* be made a party defendant. Eilts v. Moore (1946), 117 Ind. App. 27, 68 N.E.2d 795; Bittinger v. Bell (1879), 65 Ind. 445.

This section is in effect a re-enactment of the equity rule with regard to parties defendant."

It is well settled that in a tort action it is generally not mandatory to sue all joint tortfeasors. *Kniola* v. *Kozlowski* (1921), 75 Ind. App. 2, 129 N.E. 489. See also cases collected on joinder of tortfeasor defendants. 2 Harvey, *Indiana Practice,* p. 261.

Tested by the older rules and case law we cannot say as a matter of law, based on the allegations of the complaint that there has been a fatal failure to join a needed party. Under the Federal rules the result is the same. See *Union Paving Company* v. *Downer Corporation* (9th Cir. 1960), 276 F.2d 468.

It is the express intent of the new procedural rules to follow closely the Federal Rules in TR. 19. The comments of Civil Code Study Commission, 2 Harvey, *Indiana Practice,* p. 247, reveal this:

"A new set of principles for determining what parties are indispensable is established by this rule which follows closely to Federal Rule 19. It will have this general effect on Indiana practice. First, litigants must be more careful to include persons who will be affected by the judgment or decree to avoid unseemly disputes as to what parties are or are not indispensable. However, the purpose of the rule is

to reduce drastically those who are indispensable parties. Second, lawyers must be cautious to analyze and visualize the effect of a judgment when some parties are left out rather than follow old precedents defining indispensable parties both in the federal and state courts, especially when those precedents have neglected to make this analysis. Third, prior Indiana cases and statutes in force naming those who are necessary parties are of some value in defining those who are indispensable, but the field of indispensable parties will be much smaller under Rule 19 than under the old Indiana practice. Fourth, the basic responsibility of establishing that an indispensable party has not been named is upon the party making the responsive pleading under Rule 12, although the court has discretion to allow the matter to be opened up at any time. Fifth, with but one exception an action will not be dismissed because an indispensable party is not named. When he is not named the proper procedure calls for an order (in the judge's discretion) that he be made a party to the action, or that the action should continue without him. The exception occurs when the indispensable party is not subject to process (see Rule 4), in which case the judge (in his discretion) may allow the action to continue with such safeguards as are necessary or he may dismiss the action."

Thus, under both the old and new procedure, we cannot say as a matter of law based on the pleadings at this stage that Appellant has failed to join a needed or indispensable party. Such is not a basis for dismissing Counts I and IV of this complaint.

## IV.

We must now consider the problem raised by the Appellant's motion under TR. 75(B) to transfer this case to the Marion Circuit Court. It should first be noted that this was not a motion for change of venue from Judge or County under TR. 76. When such a motion for change of venue from County or Judge is filed under TR. 76, a trial court which otherwise has acquired jurisdiction over the subject matter, is obligated to grant such motion and to take no further action therein. See *State ex rel. Lindsey* v.

*Beavers* (1947), 225 Ind. 398, 75 N.E.2d 660; *State ex rel. Bradshaw* v. *Probate Court* (1947), 225 Ind. 268, 73 N.E.2d 769; and *Dowd* v. *Harmon* (1951), 229 Ind. 254, 96 N.E.2d 902. We do not deem that a motion to transfer under TR. 75 precludes the exercise of the rights to a change of venue from court or county under TR. 76 and therefore the filing of a Rule 76 [sic] motion to transfer does not automatically preclude all further action by the forum where the action is pending. In this case our opinion has eliminated the basis for any transfer under TR. 75. On remand both parties will still be able to exercise their options under TR. 76.

## V.

The trial court was correct in at least one respect in refusing to retroactively apply that part of TR. 75(A) and (D) which in effect gives all civil courts jurisdiction to hear all civil cases subject to the rules of preferred venue. The intent of the rule was to eliminate the maze of statutes and remedies limiting particular courts to special kinds of jurisdiction. See 2 Harvey, *Indiana Practice*, p. 544, *et seq.* The 1871 statute cited here is certainly part of that maze. To permit the General Assembly which acted legislatively to approve the provisions of TR. 75 and the Supreme Court by its rule-making power to make a substantive change in the subject matter jurisdiction of the trial court during the pendency of a given case and then retroactively apply such change to pending cases filed before its effective date would certainly be unjust. It is precisely the kind of injustice contemplated in TR. 84. TR. 84 is taken from the comparable Federal Rule 86(a) and the experience in the Federal Judiciary at the time they were adopted or changed is relevant. It was held that the new Federal Rules did not authorize or *permit* retroactive ouster of jurisdiction previously established and complete. *Schlaefer* v. *Schlaefer* (D.C. Cir 1940), 112 F. 2d 117, 130 A.L.R. 1014; *Interna-*

*tional Trading Corp.* v. *Edison* (D.C. Cir. 1940), 109 F. 2d 825, cert. den. 310 U.S. 652. It is correct that when new rules affect only a remedy and not a vested right they may be applied to pending litigation. *Woodring* v. *Hall* (1968), 200 Kan. 597, 438 P. 2d 135; and *de Leo* v. *Childs* (D.C. Mass. 1969), 304 F. Supp. 593. The subject matter jurisdiction of a forum trial court at the time as the case is filed is more than a mere remedy. Under TR. 84 the trial court has discretion to refrain from applying the new rules to cases pending at the time of their effective date. *Doyle* v. *Loring* (6th Cir. 1939), 107 F. 2d 337, cert. den. 309 U.S. 686; *New Orleans Public Belt R. Co.* v. *Wallace* (5th Cir. 1949), 173 F. 2d 145; and *Preston* v. *Aetna Life Ins. Co.* (7th Cir. 1949), 174 F. 2d 10, cert. den. 338 U.S. 829.

Since the outcome of this case is not otherwise affected by the trial court's decision not to apply the new rules, we limit our discussion of TR. 84 to its effect on the non-application of TR. 75.

The decision of the trial court to dismiss is hereby affirmed as to Counts II and III of the Appellant's second amended complaint and is affirmed as to Miami Valley Milk Producers Association because of the statute of limitations. The granting of said motion to dismiss is hereby reversed as to Counts I and IV of the Appellant's second amended complaint. This case is ordered remanded to the Superior Court of Marion County, Room 3, for further proceedings consistent herewith.

Hoffman, C.J. and Staton, J., concur.

Note.—Reported at 299 N.E.2d 631.